Matthew D. Stockwell, Esq. (32922005)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street New York, NY 10019
(212) 858-1075
Attorneys for Plaintiff, Pulte Homes of NJ, Limited Partnership

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PULTE HOMES OF NJ, LIMITED PARTNERSHIP, <br><br> Plaintiff, <br><br> v. <br><br> ERIE INSURANCE EXCHANGE, PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, and EVANSTON INSURANCE COMPANY, <br><br> Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> **Case No. 2:25-cv-18116** |

Plaintiff Pulte Homes of NJ, Limited Partnership ("Pulte"), by and through its undersigned counsel, for its Complaint and Demand for Jury Trial against Defendants Erie Insurance Exchange ("Erie"), Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), and Evanston Insurance Company ("Evanston"), alleges as follows:

## PARTIES

1.      Plaintiff Pulte is a limited partnership formed under the laws of Michigan with its principal place of business located at 3350 Peachtree Road NE in Atlanta, Georgia. Pulte is comprised of one general partner and one limited partner.

2.      The general partner of Pulte is Pulte Home Corporation of the Delaware Valley. Pulte Home Corporation of the Delaware Valley is a corporation formed under the laws of Michigan with its principal place of business located at 3350 Peachtree Road NE in Atlanta, Georgia.

3.      The limited partner of Pulte is Preserve II, Inc. Preserve II, Inc. is a corporation formed under the laws of Michigan with its principal place of business located at 3350 Peachtree Road NE in Atlanta, Georgia.

4.      Upon information and belief, Defendant Erie is a corporation organized under the laws of Pennsylvania with its principal place of business located at 100 Erie Insurance Place in Erie, Pennsylvania. Erie is licensed to and does carry on business as an accredited reinsurer in New Jersey. Erie is also licensed to and does carry on business as a property/casualty insurer in Pennsylvania.

5.      Upon information and belief, Defendant Penn National is a corporation organized under the laws of Pennsylvania with its principal place of business located at Two North Second Street in Harrisburg, Pennsylvania. Penn National is licensed to and does carry on business as a property/casualty insurer in New Jersey.

2

6.     Upon information and belief, Defendant Evanston is a corporation organized under the laws of Illinois with its principal place of business located at 10275 West Higgins Road, Suite 750 in Rosemont, Illinois. Evanston is licensed to and does carry on business as a surplus lines insurer in New Jersey.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this matter involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District; the property that is the subject of the underlying lawsuit for which Pulte seeks insurance coverage is situated in this District; and the insurer defendants conduct business in this District.

## FACTUAL ALLEGATIONS

## I.    PULTE'S CONTRACTORS

9.     Pulte was the developer of a residential community known as Signature Place at Garfield involving the construction of townhome-style condominiums and other common improvements, including a clubhouse and recreational amenities, located in Bergen County, New Jersey ("Project").

3

10.     Pulte and Construction Applicators Philadelphia, LLC ("CAP") entered into two Master Trade Contractor Agreements dated February 23, 2009, and March 9, 2011 (collectively, "CAP Contracts"), pursuant to which CAP agreed to perform work on the Project. Copies of the CAP Contracts are attached as Exhibit 1.

11.     Beginning in 2010, Pulte and CAP executed multiple Schedule A's further detailing CAP's work on the Project. These Schedule A's were incorporated into the CAP Contracts, attached as Exhibit 2.

12.     The CAP Contracts required that Pulte be added as an additional insured on CAP's liability insurance policies by having the insurance carrier issue an additional insured endorsement(s) at least as broad as the ISO Form CG 2010 11/85 Additional Insured – Owners, Lessees or Contractors – Form B Endorsement. Pulte's additional insured status under the policies could not be limited by amendatory language. The CAP Contracts also required that the policies provide primary coverage to Pulte.

13.     Pulte and Michael J. Wright Construction Co., Inc. ("MJW") entered into three Master Trade Contractor Agreements dated November 15, 2009, January 18, 2011, and January 17, 2014 (collectively, "MJW Contracts"), pursuant to which MJW agreed to perform work on the Project. Copies of the MJW Contracts are attached as Exhibit 3.

4

14.    Beginning in 2010, Pulte and MJW executed multiple Schedule A's further detailing MJW's work on the Project. These Schedule A's were incorporated into the MJW Contracts, attached as Exhibit 4.

15.    The MJW Contracts required that Pulte be added as an additional insured on MJW's liability insurance policies by having the insurance carrier issue an additional insured endorsement(s) at least as broad as the ISO Form CG 2010 11/85 Additional Insured – Owners, Lessees or Contractors – Form B Endorsement. Pulte's additional insured status under the policies could not be limited by amendatory language. The MJW Contracts also required that the policies provide primary coverage to Pulte.

## II.    THE SIGNATURE PLACE LAWSUIT

16.    The Signature Place at Garfield Condominium Association, Inc. ("Association") filed a lawsuit against Pulte, styled *Signature Place at Garfield Condominium Association, Inc. v. Pulte Homes of NJ, Limited Partnership, et al.*, New Jersey Superior Court, Bergen County, Law Division, Docket No. BER-L-7442-20 ("Lawsuit").

17.    On or about December 1, 2020, the Association filed a complaint and Jury Demand ("Complaint") in the Lawsuit. A copy of the Complaint is attached as Exhibit 5.

4935-3314-8539.v5

18.    The Association has since filed five amended complaints, dated February 26, 2021; April 20, 2021; January 31, 2022; November 29, 2022; and April 16, 2024 (collectively, "Amended Complaints"). In addition to Pulte, the Amended Complaints specifically name CAP and MJW as defendants, among others. Copies of the Amended Complaints are attached as Exhibits 6 through 10.

19.    The Complaint and Amended Complaints (collectively, "Complaints") allege that defective work, including work performed by CAP and MJW, resulted in property damage to the Project for which Pulte is liable.

20.    The Complaints allege that these damages to the Project "have caused, and will in the future cause, the Association to expend substantial sums of money," for which Pulte is alleged to be liable.

A.    **Work Performed by CAP and MJW**

21.    The Complaints allege that CAP "acted as a subcontractor [and] provided construction services including dry wall installation in connection with the Development of the Community [Project]."

22.    The Complaints allege that MJW "acted as a subcontractor and provided construction services including framing and roofing structural carpentry in connection with the Development of the Community."

23.    The Complaints generally allege that Pulte's subcontractors, including CAP and MJW, "had a duty to . . . construct . . . the [Project] free of defects" and

6

that Pulte's subcontractors "negligently and carelessly failed" to do so, resulting in damage to "buildings, site improvements and common elements" at the Project.

24.    The Complaints specifically allege that "defects in the roof structure and framing include but are not limited to, the failure to properly fasten the ceiling to the roof structure causing the joints between the walls and ceilings on the third floor of all fourteen (14) townhouse building[s] to exhibit separation and cracking due [to] defective roof structure commonly known as truss lift."

25.    The Complaints further allege "defects in the clubhouse includ[ing], but . . . not limited to, ceiling and gypsum board that exhibit delamination and cracking," necessarily resulting in damage to other non-defective work, including paint.

## FACTUAL ALLEGATIONS – ERIE

26.    Erie issued at least one general liability policy to CAP for the period from September 13, 2014, through September 13, 2015, Policy No. Q451350729 ("Erie Policy"). A copy of the Erie Policy currently in Pulte's possession is attached as Exhibit 11. The copy in Pulte's possession appears to be incomplete, but upon information and belief, Erie has a complete copy of the Erie Policy.

27.    Upon information and belief, the insuring agreement of the Erie Policy states, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages, because of "bodily injury" or

7

"property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

28.     Upon information and belief, the Erie Policy defines "property damage" to include:

   a.     Physical injury to tangible property, including all resulting loss of use of that property . . . . or

   b.     Loss of use of tangible property that is not physically injured . . . .

   c.     "Property damage" does not include any loss, cost or expense to correct any defective, faulty or incorrect work performed by you or by any contractors or subcontractors working directly or indirectly on your behalf.

29.     Upon information and belief, for coverage to be afforded under the Erie Policy, "property damage" must be caused by an "occurrence," which is defined as follows:

"Occurrence" means accident, including continuous or repeated exposure to substantially the same general harmful conditions. "Property damage" to "your work" will constitute an "occurrence" if all of the following conditions are met:

1. The "property damage" to "your work" is included in the "products-completed operations hazard";

2. The damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor; and

3. The "property damage" is not expected or intended by you or anyone for whom you are legally responsible.

30.     Upon information and belief, the Erie Policy includes the "Additional Insured – Owners, Lessees, or Contractors – Automatic Status When Required in

8

Construction Agreement With You – Completed Operations (ULUG)" endorsement. The copy of the Erie Policy in Pulte's possession does not include a copy of the ULUG endorsement, but upon information and belief, the ULUG endorsement is incorporated into the Erie Policy.

31.     Upon information and belief, the ULUG endorsement states, in relevant part:

> **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" and "property damage" caused in whole or in part, by "your work" performed for that additional insured and included in the "products-completed operations hazard".

32.     The CAP Contracts required that Pulte be named as an additional insured.

33.     The Erie Policy provides coverage to Pulte as an additional insured and requires that Erie defend Pulte against allegations of liability because of property damage resulting from CAP's work.

34.     On December 4, 2020, Pulte tendered the Lawsuit to Erie and demanded a defense and indemnity in connection therewith.

4935-3314-8539.v5

35.    On May 20, 2021, Erie refused to provide a defense and denied coverage to Pulte as an additional insured under the Erie Policy. A copy of this letter is attached as Exhibit 12.

36.    The Complaints specifically name CAP as a defendant and allege that defective work performed by CAP resulted in property damage to the Project for which Pulte is liable.

37.    Erie nevertheless denied coverage to Pulte on the erroneous basis that the Complaints do not allege "property damage" due to an "occurrence" within the meaning of the Erie Policy.

38.    Pulte has disputed Erie's wrongful coverage denial, but Erie has maintained its refusal to defend Pulte as an additional insured in letters dated October 22, 2021; February 14, 2024; and September 26, 2024. Copies of these letters are attached as Exhibits 13 through 15.

39.    As a result of Erie's denial, Pulte has been forced to bear the costs of defending against the Lawsuit.

## FACTUAL ALLEGATIONS – PENN NATIONAL

40.    Penn National issued at least five general liability policies to MJW for the period from March 5, 2010, through March 5, 2015, Policy No. CL90661879 ("Penn National Policies"). Pulte does not have complete copies of the Penn

National Policies, but upon information and belief, Penn National has complete copies of the Penn National Policies.

41. Upon information and belief, the insuring agreement of the Penn National Policies states, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

42. Upon information and belief, the Penn National Policies incorporate the standard definition of "property damage," which includes:

> a. Physical injury to tangible property, including all resulting loss of use of that property . . . . or

> b. Loss of use of tangible property that is not physically injured . . . .

43. Upon information and belief, for coverage to be afforded under the Penn National Policies, "property damage" must be caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

44. Upon information and belief, the "Automatic Additional Insureds – Owners, Contractors and Subcontractors (Completed Operations)" endorsement in the Penn National Policies adds the following provision to "SECTION II – WHO IS AN INSURED":

> Any person(s) or organization(s) (referred to below as additional insured) with whom you are required in a written contract or agreement to name as an additional insured for the "products-completed operations hazard", but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work", at the location or project designated and described in the contract or agreement, performed for that additional insured and included in the "products-completed operations hazard". . . .

45.    The MJW Contracts required that Pulte be named as an additional insured, including with respect to liability for "property damage" resulting from MJW's work on the Project.

46.    The Penn National Policies provide coverage to Pulte as an additional insured and require that Penn National defend Pulte against allegations of liability because of property damage resulting from MJW's work on the Project.

47.    On November 30, 2020, Pulte tendered the Lawsuit to Penn National and demanded a defense and indemnity in connection therewith.

48.    On May 21, 2021, Penn National refused to provide a defense and denied coverage to Pulte as an additional insured under the Penn National Policies. A copy of Penn National's denial is attached as Exhibit 16.

49.    Penn National denied coverage to Pulte based on its incorrect belief that the requirements of the Penn National Policies' additional insured endorsement were not satisfied.

4935-3314-8539.v5

50.     The MJW Contracts, which incorporate the Project-specific Schedule A's, specifically describe the Project and require that Pulte be included as an additional insured on MJW's policies, including the Penn National Policies.

51.     The Complaints specifically name MJW as a defendant and allege that defective work performed by MJW resulted in property damage to the Project for which Pulte is liable.

52.     Upon information and belief, Penn National agreed to provide a defense to MJW in the Lawsuit.

53.     Penn National nevertheless denied coverage to Pulte in the same Lawsuit.

54.     Pulte has disputed Penn National's wrongful coverage denial, but Penn National has maintained its refusal to defend Pulte as an additional insured in letters dated September 28, 2021; August 11, 2023; and March 4, 2024. Copies of these letters are attached as Exhibits 17 through 19.

55.     As a result of Penn National's denial, Pulte has been forced to bear the costs of defending against the Lawsuit.

**FACTUAL ALLEGATIONS – EVANSTON**

56.     Evanston issued at least one general liability policy to MJW for the period from March 5, 2016, through March 5, 2017, Policy No. 3C41582 ("Evanston

13

Policy"). A copy of the Evanston Policy currently in Pulte's possession is attached as Exhibit 20.

57.    The insuring agreement of the Evanston Policy states, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

58.    The Evanston Policy incorporates the standard definition of "property damage," which includes:

> a.    Physical injury to tangible property, including all resulting loss of use of that property . . . . or

> b.    Loss of use of tangible property that is not physically injured . . . .

59.    For coverage to be afforded under the Evanston Policy, "property damage" must be caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

60.    The "Additional Insured – Owners, Lessees, or Contractors – Completed Operations" endorsement in the Evanston Policy states, in relevant part:

> **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) show in the Schedule, but only with respect to liability for "bodily injury" and "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

14

61.    The "Name of Additional Insured Person(s) or Organization(s)" schedule lists as additional insureds "[parties a]s required by written contract executed by both parties prior to loss."

62.    The MJW Contracts required that Pulte be named as an additional insured.

63.    The Evanston Policy provides coverage to Pulte as an additional insured and requires that Evanston defend Pulte against allegations of liability because of property damage resulting from MJW's work.

64.    The Complaints specifically name MJW as a defendant and allege that defective work performed by MJW resulted in property damage to the Project for which Pulte is liable.

65.    On April 25, 2021, Pulte tendered the Lawsuit to Evanston and demanded a defense and indemnity in connection therewith.

66.    In the four and a half years since Pulte's tender, Pulte has repeatedly followed up with Evanston regarding its failure to respond and requested Evanston's coverage position.

67.    As of the time of this filing, Evanston still has not issued a coverage determination to Pulte.

68.    As a result of Evanston's inaction, Pulte has been forced to bear the costs of defending against the Lawsuit.

4935-3314-8539.v5

### FIRST CAUSE OF ACTION
### *Declaratory Judgment Against Erie*

69.     Pulte re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 4, 7 through 12, 16 through 21, and 23 through 39 as if fully set forth herein.

70.     Upon information and belief, Erie disputes one or more of the allegations herein, including, without limitation, the allegation that Erie owes a duty to defend Pulte as an additional insured in connection with the Lawsuit. As a result, Pulte is in doubt as to its rights under the Erie Policy.

71.     By reason of the foregoing, an actual and justiciable controversy exists between Pulte and Erie regarding their respective rights and obligations under the Erie Policy, including, but not limited to, Erie's obligation to defend Pulte as an additional insured in connection with the Lawsuit.

72.     An order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

73.     Pulte is entitled to a declaratory judgment, *inter alia*, that:

(a)     Erie's duty to defend Pulte was triggered by the Complaints in the Lawsuit;

(b)     Erie has a current and ongoing obligation to provide a defense to Pulte in the Lawsuit; and

4935-3314-8539.v5

(c)    Erie is obligated to reimburse Pulte for attorneys' fees, expenses, and other litigation costs incurred in connection with its defense of the Lawsuit from no later than the earliest date on which Erie was notified of the Lawsuit.

**WHEREFORE**, Pulte respectfully requests that the Court enter judgment against Erie awarding Pulte the relief outlined above, together with prejudgment interest, attorneys' fees pursuant to New Jersey Rule 4:42-9(a)(6), costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## SECOND CAUSE OF ACTION
### *Breach of the Duty to Defend Against Erie*

74.    Pulte re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 4, 7 through 12, 16 through 21, and 23 through 39 as if fully set forth herein.

75.    Upon information and belief, the Erie Policy is a written contract of insurance obligating Erie to defend Pulte, as an additional insured, against any suit seeking damages because of property damage to which the Erie Policy applies. Erie's contractual duty to defend is separate and apart from its duty to indemnify and is triggered if there is any potential for coverage.

76.    The Complaints allege facts that create the potential for coverage under the Erie Policy, thereby triggering Erie's duty to defend.

17

77.    Erie breached its contractual duty to defend Pulte under the Erie Policy by refusing to provide a defense to Pulte in the Lawsuit.

78.    As a direct and proximate result of Erie's breach of its duty to defend, Pulte has suffered damages, including, but not limited to, attorneys' fees and other costs and expenses Pulte has been forced to incur to defend itself in the Lawsuit. These damages are continuing in nature.

**WHEREFORE**, Pulte respectfully requests that the Court enter judgment against Erie awarding Pulte compensatory damages directly and proximately caused by Erie's breach of its contractual duty to defend Pulte, together with prejudgment interest, attorneys' fees pursuant to New Jersey Rule 4:42-9(a)(6), costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## THIRD CAUSE OF ACTION
### *Declaratory Judgment Against Penn National*

79.    Pulte re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 3, 5, 7 through 9, 13 through 20, 22 through 25, and 40 through 55 as if fully set forth herein.

80.    Upon information and belief, Penn National disputes one or more of the allegations herein, including, without limitation, the allegation that Penn National owes a duty to defend Pulte as an additional insured in connection with the Lawsuit. As a result, Pulte is in doubt as to its rights under the Penn National Policies.

18

81.     By reason of the foregoing, an actual and justiciable controversy exists between Pulte and Penn National regarding their respective rights and obligations under the Penn National Policies, including, but not limited to, Penn National's obligation to defend Pulte as an additional insured in connection with the Lawsuit.

82.     An order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

83.     Pulte is entitled to a declaratory judgment, *inter alia*, that:

(a)     Penn National's duty to defend Pulte was triggered by the Complaints in the Lawsuit;

(b)     Penn National has a current and ongoing obligation to provide a defense to Pulte in the Lawsuit; and

(c)     Penn National is obligated to reimburse Pulte for attorneys' fees, expenses, and other litigation costs incurred in connection with its defense of the Lawsuit from no later than the earliest date on which Penn National was notified of the Lawsuit.

**WHEREFORE**, Pulte respectfully requests that the Court enter judgment against Penn National awarding Pulte the relief outlined above, together with prejudgment interest, attorneys' fees pursuant to New Jersey Rule 4:42-9(a)(6), costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

4935-3314-8539.v5

## FOURTH CAUSE OF ACTION
### *Breach of the Duty to Defend Against Penn National*

84.    Pulte re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 3, 5, 7 through 9, 13 through 20, 22 through 25, and 40 through 55 as if fully set forth herein.

85.    The Penn National Policies are written contracts of insurance obligating Penn National to defend Pulte, as an additional insured, against any suit seeking damages because of property damage to which the Penn National Policies apply. Penn National's contractual duty to defend is separate and apart from its duty to indemnify and is triggered if there is any potential for coverage.

86.    The Complaints allege facts that create the potential for coverage under the Penn National Policies, thereby triggering Penn National's duty to defend.

87.    Penn National breached its contractual duty to defend Pulte under the Penn National Policies by refusing to provide a defense to Pulte in the Lawsuit.

88.    As a direct and proximate result of Penn National's breach of its duty to defend, Pulte has suffered damages, including, but not limited to, attorneys' fees and other costs and expenses Pulte has been forced to incur to defend itself in the Lawsuit. These damages are continuing in nature.

**WHEREFORE**, Pulte respectfully requests that the Court enter judgment against Penn National awarding Pulte compensatory damages directly and proximately caused by Penn National's breach of its contractual duty to defend Pulte,

4935-3314-8539.v5

together with prejudgment interest, attorneys' fees pursuant to New Jersey Rule 4:42-9(a)(6), costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

### FIFTH CAUSE OF ACTION
### *Declaratory Judgment Against Evanston*

89.     Pulte re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 3, 6 through 9, 13 through 20, 22 through 25, and 56 through 68 as if fully set forth herein.

90.     Upon information and belief, Evanston disputes one or more of the allegations herein, including, without limitation, the allegation that Evanston owes a duty to defend Pulte as an additional insured in connection with the Lawsuit. As a result, Pulte is in doubt as to its rights under the Evanston Policy.

91.     By reason of the foregoing, an actual and justiciable controversy exists between Pulte and Evanston regarding their respective rights and obligations under the Evanston Policy, including, but not limited to, Evanston's obligation to defend Pulte as an additional insured in connection with the Lawsuit.

92.     An order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

93.     Pulte is entitled to a declaratory judgment, *inter alia*, that:

(a)     Evanston's duty to defend Pulte was triggered by the Complaints in the Lawsuit;

(b)    Evanston has a current and ongoing obligation to provide a defense to Pulte in the Lawsuit; and

(c)    Evanston is obligated to reimburse Pulte for attorneys' fees, expenses, and other litigation costs incurred in connection with its defense of the Lawsuit from no later than the earliest date on which Evanston was notified of the Lawsuit.

**WHEREFORE**, Pulte respectfully requests that the Court enter judgment against Evanston awarding Pulte the relief outlined above, together with prejudgment interest, attorneys' fees pursuant to New Jersey Rule 4:42-9(a)(6), costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## SIXTH CAUSE OF ACTION
### *Breach of the Duty to Defend Against Evanston*

94.    Pulte re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 3, 6 through 9, 13 through 20, 22 through 25, and 56 through 68 as if fully set forth herein.

95.    The Evanston Policy is a written contract of insurance obligating Evanston to defend Pulte, as an additional insured, against any suit seeking damages because of property damage to which the Evanston Policy applies. Evanston's contractual duty to defend is separate and apart from its duty to indemnify and is triggered if there is any potential for coverage.

22

96.    The Complaints allege facts that create the potential for coverage under the Evanston Policy, thereby triggering Evanston's duty to defend.

97.    Evanston breached its contractual duty to defend Pulte under the Evanston Policy by failing to provide a defense to Pulte in the Lawsuit.

98.    As a direct and proximate result of Evanston's breach of its duty to defend, Pulte has suffered damages, including, but not limited to, attorneys' fees and other costs and expenses Pulte has been forced to incur to defend itself in the Lawsuit. These damages are continuing in nature.

**WHEREFORE**, Pulte respectfully requests that the Court enter judgment against Evanston awarding Pulte compensatory damages directly and proximately caused by Evanston's breach of its contractual duty to defend Pulte, together with prejudgment interest, attorneys' fees pursuant to New Jersey Rule 4:42-9(a)(6), costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## <u>JURY DEMAND</u>

Pulte hereby demands a trial by jury of all issues triable as of right by jury in its Complaint.

23

Dated:  December 2, 2025          Respectfully submitted,

                                  s/Matthew D. Stockwell
                                  Matthew D. Stockwell, Esq.
                                  PILLSBURY WINTHROP SHAW
                                      PITTMAN LLP
                                  31 West 52nd Street
                                  New York, NY 10019
                                  (212) 858-1075
                                  matthew.stockwell@pillsburylaw.com

                                  *Attorney for Plaintiff, Pulte Homes of NJ,
                                  Limited Partnership*

4935-3314-8539.v5